**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PI-NET INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITIZENS FINANCIAL GROUP, INC., ) <br> ) <br> Defendant. ) | C.A. No. 12-355-RGA |

**ANSWERING BRIEF IN IN OPPOSITION TO
CITIZENS FINANCIAL GROUP, INC.'S
<u>MOTION TO STAY</u>**

Dated: May 13, 2013

George Pazuniak (DE Bar No. 478)
O'Kelly Ernst & Bielli, LLC
901 N. Market St.
Suite 1000
Wilmington, De 19801

Tel: 302-478-4230
Fax: (302) 295-2873
Gp@Del-Iplaw.Com

*Attorneys For Plaintiff Pi-Net International, Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION AND STAGE OF PROCEEDINGS ................................................. - 1 -

II. SUMMARY OF ARGUMENT ..................................................................................... - 1 -

III. STATEMENT OF FACTS ............................................................................................ - 3 -

    A. Proceedings in the Case ...................................................................................... - 3 -

    B. Technology of the Patents ................................................................................... - 4 -

IV. ARGUMENT ................................................................................................................. - 7 -

    A. SAP's CBM Petition is Meritless, and is Not A Basis for a Stay ....................... - 7 -

    B. The Court Should Not Stay Proceedings In View of the Pending CBM Review ................................................................................................................ - 9 -

        A. A Stay Cannot Simplify Any Issues ...................................................... - 10 -

        B. Current Status of the Case Does Not Support A Stay ........................... - 10 -

        C. A Stay Would Unduly Prejudice Pi-Net And ....................................... - 11 -

    Present A Clear Tactical Advantage For The Moving Party .......................... - 11 -

        D. A Stay Will Not Reduce The Burden On The Parties And On The Court .................................................................................................... - 12 -

    C. The Court Should Not Stay Proceedings Pending *Inter Partes* Review .......... - 12 -

    D. Precedent Counsels Against A Stay .................................................................. - 14 -

V. CONCLUSION ............................................................................................................ - 17 -

# **TABLE OF AUTHORITIES**

Cases

*Imagevision.net, Inc. v. Internet Payment Exch., Inc.*,
  2013 U.S. Dist. LEXIS 56943 (D. Del. Apr. 22, 2013) ......................... - 12 -, - 13 -, - 14 -, - 16 -

*Markets-Alert Pty. Ltd. v. Bloomberg Finc. L.P.*,
  2013 U.S. Dist. LEXIS 15300, at *7 (D. Del. Feb. 5, 2013) ........................................ - 1 -, - 15 -

*Nippon Steel & Sumito Metal Corp. v. POSCO & POSCO Am. Corp.*,
  2013 U.S. Dist. LEXIS 62710 (D.N.J. May 2, 2013) ............................................................. - 9 -

*SoftView LLC v. Apple Inc.*,
  2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012) ...................................................... - 16 -

*United States v. Gordon*,
  334 F. Supp. 2d 581(D. Del. 2004) .............................................................................. - 7 -, - 15 -

*Walker Digital, LLC v. Google, Inc.*,
  2013 U.S. Dist. LEXIS 52176 (D. Del. Apr. 11, 2013) ....................................................... - 16 -

Statutes

AIA §18(d) ................................................................................................................................ - 8 -

Regulations

37 C.F.R. § 42.301 ................................................................................................................... - 8 -

## I.   INTRODUCTION AND STAGE OF PROCEEDINGS

Defendant Citizens Financial Group, Inc. ("Citizens") has moved to stay this litigation. Plaintiff Pi-Net International, Inc. ("Pi-Net") opposes the motion to stay, and this is Pi-Net's response in opposition to Citizens' motion.

## II.   SUMMARY OF ARGUMENT

Citizens does not address the most significant aspects of its motion, even though they require the denial of a stay. The present circumstances are the opposite of the facts in *Markets-Alert Pty. Ltd. v. Bloomberg Finc. L.P.*, 2013 U.S. Dist. LEXIS 15300, at *7 (D. Del. Feb. 5, 2013), and Judge Sleet's analysis plainly says that the Court would have denied the motion to stay on the facts here.

This is one of four cases which are coordinated under a common Scheduling Order. Of the four groups of Defendants, only Citizens moved to stay its case, and so Citizens seeks to stay this case, while all the other cases proceed to trial.

Citizens filed this motion (i) after litigating this case for over a year, (ii) after Citizens initiated a request to the Court for an early motion for summary judgment, which the Court granted, and which has already been fully briefed; (iii) after the parties have completed their briefing on claim construction; (iv) after Pi-Net had already made all its disclosures required by the Court's Rules and the Scheduling Order, including detailed claim charts on infringement; and (v) after Pi-Net had already produced its documents and had provided other discovery in the course of the coordinated proceedings.

In fact, nothing commends Citizens' motion, and there is every reason to reject it. This action was filed on March 19, 2012. Citizens, for its own benefit, then joined the other Defendants and Plaintiff Pi-Net in asking the Court to coordinate all the cases. The Court

accepted Citizens' invitation, and since then all the cases have proceeded on a single coordinated track, with virtually every filing and service being coordinated with all the other cases.

Now, over a year after the litigation began, after taking advantage of the coordination of the cases until now, Citizens has moved to create a dual litigation track. One track will involve the Court, Citizens and Pi-Net, and will be stayed; and the second track will involve the Court, Pi-Net and all the other Defendants, which will continue with the Scheduling Order. Perhaps such reneging on one's agreement to coordinate the proceedings – after taking advantage of the process for the prior life of the cases – is to be expected in litigation. But the real nub of the issues is that the facts and circumstances of the motion make a stay impossible to sustain under established principles governing stays, and even under the factors specified in the new AIA procedures. The actual facts and circumstances contradict Citizens' arguments.

**First**, a stay will <u>not</u> simplify or eliminate issues for trial. Contrary to Citizens' argument that "the PTAB will likely grant a trial in the pending CBM review" (DI 67 at 2), the Patent Office does not have jurisdiction to grant the CBM review, because the claims of the '158 Patent are directed to technology and not to business methods. Citizens has not even attempted to carry its burden of demonstrating that the '158 Patent is subject to CBM review.

**Second**, although Citizens argues that "discovery is not complete, and trial is more than a year away" (DI 67 at 2), this litigation has already significantly progressed. Even if the Court were to grant a motion to stay, trial would occur in the coordinated cases long before the Patent Office proceedings were completed.

**Third**, a stay will unduly prejudice Pi-Net. Contrary to Citizens' argument, Citizens has not demonstrated the applicability of CBM review, and thus the CBM review's "rapid timeline" are moot. None of the Pi-Net Patents are business method patents within the jurisdictional limits of

the AIA statute. Pi-Net will be prejudiced, because it will have to try its case against the other Defendants, while Citizens sits on the sidelines and takes a second shot at Pi-Net. Pi-Net is prejudiced, because it has already performed its obligations under the agreed-upon Scheduling Order, and Citizens should as well.

**Fourth**, a stay will not ease the burden on the parties. To the contrary, a stay will increase time, effort and complexity, because the other coordinated cases will continue. Thus, if Citizens is de-coordinated by way of a stay, the Court and Pi-Net are simply looking at a second set of proceedings after the stay would be lifted. Unless all the claims of all three patents are held invalid, which is most unlikely, the case will have to be resumed at a later time. In addition, Citizens' has raised defenses, such as inequitable conduct, which cannot be considered by the Patent Office. Thus, a stay will require trial of all the other cases anyhow, and this case will still have to be resumed, because it is statistically improbable that all the claims of all three patents will be invalidated.

In short, Citizen's motion for a stay fails, because it is filed too late, and disregards that its motion will simply double the burden on the Court and Pi-Net. Citizens cannot explain why it proceeded with this case for over a year before seeking a stay. It could have filed its petitions for *inter partes* review at the outset of this case, but deliberately decided to proceed with the litigation. After it received Pi-Net's discovery and precipitated the claim construction briefing and a motion for early summary judgment, Citizens is estopped from reversing course.

### III.  STATEMENT OF FACTS

#### A.  Proceedings in the Case

The present suit was filed March 19, 2012, as part of a series of cases filed by Pi-Net against several banks. The parties jointly developed and submitted to the Court a proposed

- 3 -

Scheduling Order, in which the parties – including citizens – asked the Court to handle in a coordinated fashion.  The Court held a pre-trial scheduling conference on July 12, 2012, after which a Scheduling Order was issued.  This was followed by a Protective Order (D.I. 23), and a hearing as the result of which the Court limited the number of Accused Instrumentalities the parties would address.  (D.I. 30, 31)

On January 22, 2013, Citizens moved for Leave to File A Motion for Partial Summary Judgment of Indefiniteness (D.I. 41).  The Court granted that Motion, specifically reflecting on Citizens' representation "that resolution of the issues in their favor would invalidate "more than 90% of the asserted claims." (D.I. 53).  That Motion for Summary Judgment has been fully briefed by the parties (D.I. 54, 55, 56, 61, 64) and is awaiting hearing by the Court on June 21, 2013.  (D.I. 53).

The parties also completed the preparation of all the claim construction briefing, and will shortly be filing the combined briefing, and this matter will also be heard by the Court on June 21, 2013.

In the meantime, Plaintiff have answered written interrogatories from Citizens, and has produced its documents and privileged logs to Citizens.

### B. Technology of the Patents

Citizens disparages Pi-Net's '158 Patent as directed to mere "business methods."  In fact, Pi-Net's patents, including the '158 Patent, are technological patents, which permit the performance of commercial transactions over the internet and the World-Wide-Web.

The invention of the patents here in suit is best exemplified by Figure 5D of the patents:



As shown in the above Figure 5D and accompanying patent text (all of which is detailed in the pending briefs on claim construction), the inventions are directed to POSvc Application s on a web-page that link the web page client with the back-end systems by way of routing an "object" which is a transactional data structure comprising attributes and information entries. This is real technology, and not a business method.

Thus, after Pi-Net's application for patent was filed, Microsoft introduced the so-called "Simple Object Access Protocol" or "SOAP," which is today commonly used for messaging between clients and back-end systems over the internet and Web. SOAP is a plain implementation of Pi-Net's invention. Indeed, the typical depiction of SOAP looks remarkably like the "object" that the inventor depicted in the Pi-Net patents, and there is a remarkable resemblance between the descriptions of the "objects" in the Pi-Net patents and the patent for SOAP (Patent 6,457,066):



The only independent claim of the '158 Patent reflects that technology:

> 1. A method for performing a real time Web transaction from a Web application over a digital network atop the Web, the method comprising:
>
> providing a Web page for display on a computer system coupled to an input device;
>
> <u>providing a point-of-service application as a selection within the Web page</u>, wherein the point-of-service application provides

> access to both a checking and savings account, the point-of-service application operating in a service network atop the World Wide Web;
>
> accepting a first signal from the Web user input device to select the point-of-service application;
>
> accepting subsequent signals from the Web user input device; and transferring funds from the checking account to the savings account in real-time <u>utilizing a routed transactional data structure that is both complete and non-deferred, in addition to being specific to the point-of-service application, the routing occurring in response to the subsequent signals</u>.

Thus, the '158 Patent claims the relevant technology shown in Figure 5D – the POSvc Application on the webpage, operating atop the World-Wide-Web, using object routing, as exemplified in the current SOAP protocol. This is pure technology as much as any technology that has made internet transactions possible. Banking transactions are a particular implementation of the Pi-Net's inventions, but it is a secondary point. The same technology, and SOAP in particular, operates in financial and non-financial areas.

## IV.  ARGUMENT

### A.  <u>SAP's CBM Petition is Meritless, and is Not A Basis for a Stay</u>

Citizens, like any other movant, must support its motion. *United States v. Gordon*, 334 F. Supp. 2d 581, 586 (D. Del. 2004) ("Typically a movant bears the burden of establishing the basis for whatever relief is being sought.") Citizens has failed to do so in several respects. Thus, Citizens asks that the Court stay the present consolidated proceedings as to it only, because its indemnitor filed a petition for CBM Review as to the '158 Patent, and then proceeds as if there is no question as to propriety of the petition. That is not the case. The '158 Patent is not subject to CBM review, because it is a technology-based patent, and the claims do not fall within the statutory definition of a business method patent. SAP's petition is nothing more than an attempt

to demean what is pioneering technological advancement, and which is now the basis for transactions on the internet and the Web.

AIA §18(d) defines a covered business method patent as follows:

> (d) Definition-
>
> (1) IN GENERAL- For purposes of this section, the term `covered business method patent' means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.
>
> (2) REGULATIONS- To assist in implementing the transitional proceeding authorized by this subsection, the Director shall issue regulations for determining whether a patent is for a technological invention.

The Patent Office has published regulations, set forth in 37 C.F.R. § 42.301, defining which patents are eligible for CBM review. These regulations state:

> (a) Covered business method patent means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, <u>except that the term does not include patents for technological inventions</u>.
>
> (b) Technological invention. In determining whether a patent is for a technological invention solely for purposes of the Transitional Program for Covered Business Methods (section 42.301(a)), the following will be considered on a case-by-case basis: <u>whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution</u>.

(Emphases supplied).

As detailed in Part III.B, *supra*, the '158 Patent claims are pure technology claims implemented for financial transactions. That the '158 Patent is a technology patent is established by the fact that one could substitute any transaction for "transferring funds from the checking account to the savings account." The same technology operates in financial and non-financial

areas, and the inventions' SOAP implementation in particular is generally used for internet messaging.

In short, Citizens has not demonstrated that the '158 Patent is a covered business method patent. The Court cannot stay the case based on SAP's petition for a purported CBM review, because the '158 patent, as a matter of law, is not eligible for CBM treatment. SAP cannot ask the Court, and the Court should not agree, to stay a case based on what is a meritless petition.

### B. The Court Should Not Stay Proceedings In View of the Pending CBM Review

The AIA does not mandate or require a stay of litigation, merely because of a CBM review. *Nippon Steel & Sumito Metal Corp. v. POSCO & POSCO Am. Corp.*, 2013 U.S. Dist. LEXIS 62710 (D.N.J. May 2, 2013) ("Congress decidedly did not provide for an automatic litigation stay upon the commencement of reexamination proceedings, perhaps to account for individual circumstances of unique cases.") The AIA does include four factors to be considered in assessing a stay pending a CBM review:

> IN GENERAL- If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--
>
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Application of these four factors does not counsel a stay in this case, but, in fact, demonstrates why a stay is untenable.

### A. A Stay Cannot Simplify Any Issues

The '158 Patent petition will not simplify the issues, because the petition should not be granted by the Patent Office. The '158 Patent is not a CBM patent as defined in the statute or as clarified by the regulations promulgated pursuant to statute. Citizens has not even attempted to support its argument that the '158 Patent is subject to CBM review, and given that the '158 Patent is not a CBM patent for the reasons detailed above, there is no basis for invoking the AIA §18. Thus, the pending petition for CBM review will not simplify the issues, and Factor A counsels only the denial of the Motion to stay.

Even if the '158 Patent was subject to CBM review, a stay cannot simplify the issues in question and streamline the trial as a practical matter. It cannot do so, because there is still at least one other pending case (in fact three other cases) directed to the '158 Patent, which are still pending and where none of the parties have asked for a stay. Therefore, all the issues in the CBM review will continue being litigated before the Court in the other pending cases. Therefore, a stay of this one case cannot simplify any issues, because the other cases will continue regardless of the stay.

Thus, assuming, *arguendo*, that Citizens were able to establish that the '158 Patent is subject to CBM review, the ultimate decision of the Patent Office may simplify issues, if it the final judgment of the Patent Board is issued prior to a judgment in this case. However, a stay will not simplify issues, in light of the other pending cases.

### B. Current Status of the Case Does Not Support A Stay

Citizens has actively pursued discovery, and Pi-Net has answered. The discovery is not completed, but it is on its way to being completed.

In accordance with the Scheduling Order, the cases should be ready for trial, and trial

- 10 -

dates will be set at a scheduling conference set for March 14, 2014.

In the meantime, it is speculative when, if anything, will occur in the pending Patent Office Proceedings. Pi-Net has until June 27, 2013 to respond to the Patent Office petition. At that point, Pi-Net must both challenge the validity of the proceedings on the grounds that the '158 Patent is not subject to CBM review and respond on the merits. The Patent Board then has until September 27, 2013 to determine whether to accept the petition. Thereafter, the statute provides that

> the final determination in any post-grant review be issued not later than 1 year after the date on which the Director notices the institution of a proceeding under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months….

Thus, if the Patent Board disallows CBM review – as it should – on the grounds that the '158 Patent is a technological patent and not basically a business method patent, then the petition will be dismissed. If the Patent Board allows the petition over Pi-Net's objection, there will not be any final determination until the Patent Board rules, which may not be until 2015, and then the Federal Circuit finally rules on the jurisdictional issues, which may not be until 2016.

In short, the litigation is far more advanced than the CBM petition, and is not subject to any jurisdictional challenge as is the CBM review. Factor B counsels against a stay.

### C. A Stay Would Unduly Prejudice Pi-Net And Present A Clear Tactical Advantage For The Moving Party

A stay would clearly prejudice not only Pi-Net, but the Court as well. Further, a stay would result in an unfair tactical advantage to Citizens.

First, as noted previously, a stay will not stop the present coordinated proceeding, because the other cases will still be ongoing. Thus, Citizens is proposing to split the current coordinated proceedings into two separate lines, forcing both the Court and Pi-Net into handling

- 11 -

the Citizens case separately from the others. This is unfair and prejudicial to the Court and Pi-Net, because Citizens had agreed with the Court, Pi-Net and all the other Defendants to have the current litigations coordinated, and the Court ordered such coordination in the Scheduling Order. Citizens thereafter took advantage of that coordination. Citizens should not now, at its whim, be allowed to renege on its agreement and de-coordinate the proceedings after the Court and the parties have performed under the Scheduling Order.

Second, Citizens could have sought *inter partes* review in the Patent Office at the outset of the case, but chose to not follow that path, but to proceed with the litigation.

Third, as to CBM review in particular, SAP filed the CBM review petition on the last possible day that it could have done so, and only after six and a half months of receiving substantial discovery from Pi-Net. The timing of the Patent Office petitions is thus prejudicial, and suggests tactical maneuvering.

### D. A Stay Will Not Reduce The Burden On The Parties And On The Court

The Court cannot stay the case based on the assumption that there will be a CBM review, which could reduce the burden on the parties, because the Patent Office has no jurisdiction to grant the CBM petition.

Even if the CBM petition were granted, there would still be no reduction of burden on the Court or Pi-Net, because the other cases will be proceeding anyhow.

### C. The Court Should Not Stay Proceedings Pending *Inter Partes* Review

The Court should also refuse to stay the Citizens case based on SAP's petition for *inter partes* review of the other two patents. The standard three-part test for stay applies in such cases. *Imagevision.net, Inc. v. Internet Payment Exch., Inc.*, 2013 U.S. Dist. LEXIS 56943 (D. Del. Apr. 22, 2013) ("The court finds no reason to alter the traditional test employed by judges in this

district in considering motions to stay pending inter partes reexaminations granted both before and after the AIA's enactment.")

The stay should be denied for much the same reasons as argued above. The relevant and dispositive facts are as follows:

a) The pending Citizens' case is part of a group of coordinated proceedings governed by a coordinate Scheduling Order. If the Court were to grant Citizens' motion, the result would be a dual-track of what had been coordinated proceedings – with Citizens on one track and all the other Defendants on another track, and the Court and Pi-Net on both tracks. Converting the current coordinated litigation into a dual-track is prejudicial to the Court, Pi-Net and the other Defendants.

b) At the same time, it is speculative whether the Patent Office will accept review the Pi-Net patents. The Court should not disrupt the agreed-upon coordinated Scheduling Order based on speculation.

c) A stay will not simplify the issues. If this case were stayed, the other cases would still go to trial, and do so before any final decision is likely from the Patent Office. Thus, the Court will have to rule on the cases regardless.

d) A stay will also not simplify the issues, because Citizens has pleaded that all three patents were procured through inequitable conduct, and assert other defenses, which cannot be considered by the Patent Office. And, of course, the Patent Office cannot decide infringement. Although Citizens cites various statistics about how many patent claims are cancelled or changed, patent claims do survive reexamination. *Imagevision.net, Inc. v. Internet Payment Exch., Inc.*, 2013 U.S. Dist. LEXIS 56943 (D. Del. Apr. 22, 2013) ("IPX fails to recognize the speculative nature of its reexamination predictions, and the PTO's published statistics suggest

that at least some claims will survive intact or in an amended form.")

      e)     Citizens' motion was filed too late – more than a year after the case was filed. The general rule is that "when the court is faced with a stay decision in the later stages of an action, 'the Court and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.'" *Imagevision.net, supra*.

      f)     In that one year period, Pi-Net and the Defendants have filed initial disclosures, completed claim construction briefing, answered written discovery, produced documents, and generally performed their obligations under the Scheduling order. The Court is proceeding with a claim construction and summary judgment hearings on June 21 – all based upon that agreed-upon Scheduling Order. It is unfair and prejudicial to change those agreed-upon processes, after Pi-Net, other parties and the Court have acted on the Scheduling Order at this late date. The lateness of Citizens' motion is particularly troublesome, because Citizens could have filed for *inter partes* review of all three Pi-Net patents before Citizens joined Pi-Net and its fellow-Defendants in submitting a coordinated Scheduling Order to the Court.

Again, Citizens is estopped from such a request, because it voluntarily joined the coordinated Scheduling Order, took advantage of it, and should not be allowed to now disrupt it at this late date. Citizens is asking for a guaranteed disruption of the coordinated proceedings in breach of Citizens' prior undertakings, based on pure speculation that Citizens – but neither the Court nor Pi-Net – may ultimately benefit from the Patent Office proceedings.

### D. Precedent Counsels Against A Stay

The cases cited by Citizens do not support a stay, and established authority supports only the denial of Citizens' motion.

The main case cited by Citizens, *Markets-Alert Pty. Ltd. v. Bloomberg Finc. L.P.*, 2013 U.S. Dist. LEXIS 15300, at *7 (D. Del. Feb. 5, 2013), is entirely distinguishable, and, in fact, supports denial of the motion:

- In *Markets-Alert Pty.*, CBM review clearly applied, and thus there was no jurisdictional hurdle as exists in this case.  Indeed, the Court held that:

    > Here, the court presumes that the claimed "technological features" of the '357 Patent are the "network of computers" and the "remote communications device."  As such, and despite Market-Alerts' generalized protests to the contrary, neither a "network of computers" nor a "remote communications device" strikes the court as particularly novel.  Put simply, it seems likely that the petition for CBM review will be granted.

    *Market-Alerts Pty.*, *supra*, 2013 U.S. Dist. LEXIS 15300 at 16.  This is very different from the '158 Patent which does not emphasize the transfer of funds, and all the emphases are on the technological issues.[1]

- All the Defendants in the coordinated cases joined in the motion to stay, and, thus, the motion would not create a "stay track" for one of several coordinated cases, and a separate "litigation track" for the remaining cases.

- The motion to stay was filed within 5 months of the actions being filed, and before an litigation activity in the cases.  The *Market-Alerts Pty* Court plainly stated that the court would have DENIED the motion to stay if it had been filed after significant litigation activities had already occurred:

    > On the other hand, when confronted with a motion to stay in the later stages of a case, "the [c]ourt and the parties have already

---

[1] *Market-Alerts Pty*. could be read to imply that it is non-movant patentee's burden to demonstrate that the patents are directed to a technological invention, rather than on the movant to demonstrate that the patent is directed to covered business methods.  There is no basis for reversing the normally applicable rule that a movant has the burden of justifying its motion, and, thus, in the present context, must demonstrate that the '158 patent is directed to business methods and not to a technological invention.  *United States v. Gordon*, 334 F. Supp. 2d 581, 586 (D. Del. 2004) ("Typically a movant bears the burden of establishing the basis for whatever relief is being sought.")

> expended significant resources on the litigation, and the principle
> of maximizing the use of judicial and litigant resources is best
> served by seeing the case through to its conclusion." Id.

*Market-Alerts Pty.*, *supra*, 2013 U.S. Dist. LEXIS 15300 at 21.

Where the facts and circumstances of the case are like the present, this Court and other Courts have consistently denied motions to stay. See, for example,

- ➢ *Imagevision.net, Inc., supra*, discussed above;

- ➢ *Walker Digital, LLC v. Google, Inc.*, 2013 U.S. Dist. LEXIS 52176, 7-8 (D. Del. Apr. 11, 2013), in which a stay was denied, because the case was already actively in litigation. The Court noted:

    Although it is tempting to hand-off the responsibility for resolving
    this dispute to the PTO, I am mindful that it was the PTO that
    issued the '014 patent in the first instance, and that the '014 patent
    is still presumed to be valid. In balancing the equities of the parties'
    respective circumstances, I find that the judicial process has
    proceeded far enough (and the administrative process has not) that
    a stay would unduly prejudice Walker Digital.

- ➢ *SoftView LLC v. Apple Inc.*, 2012 U.S. Dist. LEXIS 104677, 13-14 (D. Del. July 26, 2012), in which the court denied a stay even though litigation was at an early stage, because the reexamination proceedings take too long. The Court stated:

    Moreover, given the early stage of the reexamination, and the
    average duration for reexaminations (including appeals), a stay in
    this case would likely last several years; resuming litigation after a
    protracted stay could raise issues with stale evidence, faded
    memories, and lost documents. Although Defendants contend that
    the evidence in this case is based on source code that can be
    preserved easily, SoftView must also rely, at least to some extent,
    on evidence that can only be acquired through witnesses, whose
    memories will inevitably fade and/or who may become more
    difficult to find over time. Conversely, the evidence that
    Defendants must rely on to prove invalidity is primarily prior art
    references, which seemingly will not change and is less likely to
    become more difficult to locate with the passage of time.

*SoftView LLC* at *13-14.

## V.   CONCLUSION

On the basis of the foregoing analysis of fact and law, Citizens' motion to stays should be denied.

Respectfully submitted,

|  |  |
|---|---|
| Dated: May 13, 2013 | */s/George Pazuniak*<br>George Pazuniak (DE Bar No. 478)<br>O'KELLY ERNST & BIELLI, LLC<br>901 N. MARKET ST.<br>SUITE 1000<br>WILMINGTON, DE 19801<br><br>Tel: 302-478-4230<br>FAX: (302) 295-2873<br>GP@del-iplaw.com<br><br>*Attorney for Plaintiff Pi-Net International, Inc.* |